Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

**Cause No.** CVW2100341

| | | |
|---|---|---|
| HOWARD L. THOMAS | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | Wilson County - 81st District Court |
| V. | § | |
| | § | ____JUDICIAL DISTRICT |
| | § | |
| SCOTT DALE CLARK, | § | |
| ANGELA CLARK, | § | |
| WILSON COUNTY, TEXAS, | § | |
| DEPUTY ROY ASHTON, in his | § | |
| Individual and Official Capacity | § | |
| as a Deputy Sheriff of Wilson County, | § | |
| Texas; and | § | |
| SHERIFF JIM STEWART, | § | |
| in his Individual and Official Capacity | § | |
| as a Deputy Sheriff of Wilson County, | § | |
| Texas; and as successor in interest to | § | |
| SHERIFF JOE TACKETT, in his | § | |
| Individual and Official Capacity as | § | |
| Sheriff of Wilson County, Texas. | § | |
| Defendants | § | WILSON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR DISCLOSURES, AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

The Plaintiff brings this action against the Defendants and in support of this action shows the following.

1.0.  **PARTIES.**

1.1.  The Plaintiff is an individual residing in Wilson County Texas.

EXHIBIT

A

Filed
5/17/2021 12:08 AM
Deborah Bryan
Wilson County
District Clerk

1.2.    The Defendants SCOTT DALE CLARK AND ANGELA CLARK are individuals who reside in Wilson County, Texas who can be served with process at 1107 C Road, Southerland Springs, Texas.

1.3.    The Defendant, FRANK ASHTON, ("Ashton") is sued individually, and in his official capacity as Deputy Sheriff of Wilson County, is sued because he is responsible for the violation of the Plaintiff's well-established rights under the United States Constitution.  At all relevant times, the Defendant Ashton was acting under color of law and as the agent, servant, and, as a matter of law, the official representative of Defendant Wilson County.  Ashton may be served with process in this case by serving him at the Wilson County Sheriff's Office.

1.4.    The Defendant, Sheriff JIM STEWART, individually, and in his official capacity as the Sheriff of Wilson County, Texas, and as the successor-in-interest to Sheriff Joe Takett, individually, and in his official capacity as Sheriff ("Stewart").  Under Texas law, Stewart is the County's final policymaker of the policies causing injury to the Plaintiff..  Also under Texas law, Sheriff Stewart was responsible for, and/or is responsible, both individually and as the successor of Sheriff Joe Tackitt, for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit.  At all relevant times, Defendant Stewart was acting under color of law and as the agent, servant, and, as a matter of law, the official representative of Defendant Wilson County.  Stewart may be served with process in this case by serving him at the Wilson

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 3 of 22

Filed
5/17/2021 12:00 AM
Debra Bryan
Wilson County
District Clerk

County Sheriff's Office.

1.5.    The Defendant, WILSON COUNTY, TEXAS, (the "County") is a political subdivision of the State of Texas. At all relevant times, Defendants Ashton and Stewart "were" Wilson County. Wilson County funds and operates and oversees the Wilson County Sheriff's Department who seized the Plaintiff in violation of the United States Constitution and the Wilson County Jail where the Plaintiff was unlawfully detained. Ashton and Stewart are responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit attributed to the County in this Petition. Wilson County can be served with process by serving the Judge of the County Commissioner's Court, Wilson County Judge Richard L. Jackson at his office at the Wilson County Courthouse.

## 2.0.    RULE 47 STATEMENT.

2.1.    The Plaintiff seeks monetary relief of monetary relief in the form of retrospective relief, actual, special, and punitive damages over $1,000,000, including, penalties, costs, expenses, pre-judgment interest, and attorney fees; as well as injunctive and retrospective relief.

## 3.0.    INTRODUCTION.

3.1.    In this case the Scott Clark, a San Antonio Police Officer who is the Plaintiff's neighbor, enlisted his Wilson County "Brothers in Blue" to bring the full weight and authority of the State of Texas to his aid – to resolve his private easement

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

dispute with his neighbor, the Plaintiff. Willing to help their fellow officer, the Wilson County Sheriff's office first gave the Plaintiff gratuitous but incorrect legal advice. They then allowed Mr. Clark to "phone-in" an arrest warrant, arrested the Plaintiff for a felony he did not commit, and sentenced him to jail two days without bond. While the Plaintiff was in jail, the Defendants applied for and obtained an order issued without notice or hearing prohibiting the Plaintiff to return to his home. And then arrested him again when he did.

3.2.    By this suit, the Plaintiff seeks a declaration by the Court that the Clarks have none of the easement rights they claim; an injunction to keep the Clarks from impeding the Plaintiff's use of the Easement in the future; damages for their injury the Plaintiff's property, and actual and punitive damages for their malicious prosecution of the Plaintiff. Likewise Deputy Ashton, Sheriff Stewart, and Wilson County are jointly and severally liable for damages and injunctive relief for violation of the Plaintiff's well-established rights as allowed by 42 U.S.C. §1983.

## 4.0.    FACTUAL BACKGROUND.

4.1.    **A quiet place in the Country.** In 2017 the Plaintiff began to look for land in the country with proximity to San Antonio. As a pipeline welding inspector and the holder of a well line inspection certification by the American Petroleum Institute, his unique skills and training are in demand worldwide. As a pipeline

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

inspector the Plaintiff spends extended time away from his home, and many times out of the country, only to be followed by extended periods of time at home. While lucrative, the toll of constant travel led the Plaintiff to look for a place of his own away from the city. In 2018 he found 17 acres in Wilson County outside of Southerland Springs which he believed would perfect for his unique lifestyle.

4.2.    The 17 acres purchased by the Plaintiff which will be referred to as the Property, was the first real property the Plaintiff's has ever owned. It had been part of a larger tract which had been divided into smaller tracts. The Plaintiffs' Warranty Deed granted him a deeded twenty-foot easement across the Defendants' property, which was for ingress and egress to the Property from the C Road. As can be seen from the picture below, the Easement runs directly in front of the Defendants, Mr & Ms. Clark's home.



Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

At the time of to the Plaintiffs purchase there was no gate where the Easement met the C Road.  To the Plaintiff's knowledge, the express grant of the 20 foot, unobstructed, ingress and egress easement across the Grant's property had never been impeded until he moved in.  He also assumed that the Grants knew of their neighbor's easement rights when they built there house so close to the Easement.

4.3.    When he first moved to the Property he discovered the Clarks had been using the Property as their own.   The Clarks' horses were grazing on his land and drinking out of a water trough the Clarks had placed on the Property.   In fact, the first time he met the Clarks, he was scolded by Ms. Clark who used vulgarities to chastise the Plaintiff for letting her horses off of his property.  At that same encounter, Mr. Clark appeared and addressed the Plaintiff by name, even though they had never met, explaining that he was a San Antonio Police Officer and implied that he had performed some sort of background check on the Plaintiff.   From that day forward, the Plaintiff got the distinct feeling that his presence was an inconvenience to the Clarks.

4.4.    Prior to the Plaintiff's purchase, the Clarks had utilized the Easement as part of their yard and had apparently gotten used to parking on the Easement. They let both their horses and chickens roam at will on the Easement, and on the Property. The Clarks did not adjust well when this became impracticable because of

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 7 of 22

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

their new neighbor. It also became apparent that the additional traffic caused by an unmarried Mexican American who had just moved from the city, kept the hours of single adult on his long stays on the Property was becoming a problem for the Clarks. Not hospitable from the beginning, Ms. Clark became increasingly hostile to her new neighbor. She seemed to enjoy and often deliberately let her dogs out to chase the Plaintiff as he used the Easement.

4.5.    **Good gates make mad neighbors.**    Upon return from one of his extended work assignments, the Plaintiff found that the Defendants had built a fence and a gate across the Easement. They did not discuss the matter with the Plaintiff, nor did they ever offer any explanation or justification of why it was necessary to interfere with the Plaintiff's right of way. The gate was twelve feet wide, limiting the use of full width of the Easement, and only swung in one direction, making it particularly inconvenient for the Plaintiff to enter and exit the Property. When the Plaintiff pointed out this fact, as well as the fact that it limited the Plaintiff's access to twelve feet, Mr. Clark claimed to that he had been given permission by the local Justice of the Peace to erect the gate. He refused to remove the gate. Instead, the Clarks continued a course of conduct that had already damaged the easement by constructing a gate across it. They locked the gate so that the Plaintiff's guests could not visit him without prior notice. He installed cameras on the gate so that he could

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 8 of 22

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

monitor anyone who visited the Plaintiff. Ms. Clark began to actually sicc her dogs on the Plaintiff anytime he used the Easement. She accused him running over the fowl she allowed to roam not only on the easement, but on the Property as well. She disposed of waste from her egg laying operation, and then reported him to the Sheriff's Office when he observed her dispose of the refuse of her chicken house to make sure it did not happen again.

4.6.    Not believing that the Clarks had the right to put up the gate, the Plaintiff began to go around the gate to avoid the inconvenience of exiting his vehicle to open the gate to get to his home.   When that proved improvident, the Plaintiff attempted to, on one occasion, remove the lock.   And on another occasion, use a hammer to remove the tabs keeping the gate from swinging in both directions. After that incident, the Clarks later blamed the Plaintiff for the death of three of the fowl that the Clarks allowed to roam the easement day and night, without any proof that this occurred.  When the Plaintiff asked Mr. Clark how they were going to resolve their escalating dispute, Mr. Clark told the Plaintiff that he would solve the problem by using his official position to have the Plaintiff arrested.  And he did.

4.7.    **Mr. Clark's "Dial-a-Warrant".**  As the Plaintiff drove through La Vernia on the evening of July 12, 2020, he was pulled over by the La Vernia Police,

Case 5:21-cv-00640-OLG-HJB     Document 1-3     Filed 07/07/21     Page 9 of 22

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

drug out of his car, forced to lay face down on the tarmac, and handcuffed. When he asked why he was being arrested, he was informed that he would find out when he was brought before the Judge. Of course, by the time the Plaintiff reached the Wilson County Jail on that Sunday evening, there was no magistrate on duty, and he was held in jail the night of July 12th without any idea of why he had been arrested. The next day, the Plaintiff was informed that he had been arrested for the felony of stalking under TEX. PENAL CODE ,§42.027. Apparently, on July 10, Mr. Clark called the Defendant Ashton and dictated over the phone facts alleged to constitute probable cause not only to arrest the Plaintiff, but to sentence the Plaintiff to three days in jail as well. The Plaintiff's bond was set at $10,000.00 by the Justice of Peace, Johnny Villareal. He posted the $10,000.00 bond on July 13th, the day he was arraigned.

4.8.    Instead of being "at once set at liberty" as required Texas Law, after posting his bond, the Plaintiff was served with an "ORDER FOR FURTHER DETENTION DIRECTED TO SHERIFF OR CORRECTIONS STAFF" (the Order of Detention) issued by a Magistrate named Alford but signed by Justice of the Peace Villareal. The order allowed (but did not require) the Sheriff to detain the Plaintiff in jail for two days, with no authorization by law, or the slightest bit of due

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

process.  The Plaintiff was informed that he had no right to post a bond, was not informed of his right to a hearing or of his right to counsel before this punishment was imposed.

4.9.    The punishment prescribed in the Order of Detention was explained to the Plaintiff as a "48 hour cooling-off period."   Such orders are, however, only applicable in cases of family violence.  *See,* TEX. CODE CRIM. PROC. ART. 17.291(b), Further Detention of Certain Persons.    Wilson County, as shown on its official forms, has adopted a policy, and the Sheriff executes the policy apparently at his whim, that allows anyone arrested for violations of TEX. CODE CRIM. PROC. ART. 42.027 to be jailed for some amount of time up to 48 hours with no right to a bond. Ashton was well aware of this policy took the Mr. Clark's "Dial-a-Warrant" over the phone.  And Mr. Clark's intent to facts charging a crime of family violence is apparent by the wording of his statement.

4.10.   While the Plaintiff was in jail serving his sentence for being arrested for stalking, Deputy Ashton filed an Application for, and Justice of the Peace Villareal issued on July 13, 2020, a Magistrate's Order for Emergency Protection. (the First Protective Order)  In the *ex parte* Application Deputy Ashton represented to the Court that the victim of the alleged stalking was Scott Clark, presumably based on the Dial-a-Warrant. The only thing prohibited by the First Protective Order (other

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 11 of 22

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

than what was already prohibited by law) was that the Plaintiff was prohibited from going within 1000 feet of the Clark's home. As shown by what happened next, the Defendants knew that the effect of the First Protective Order was to make it a crime for the Plaintiff to go home.

4.11.    The Plaintiff was detained from Sunday, July 12 until Wednesday July 15, 2020. Not having expected his unlawful arrest, the Plaintiff had not secured his home, so on the returned home to secure it, ensure that the condition of his bond were met, and spend the night. Little did he know, on the 15th another arrest warrant had been issued, this time alleging that the First Protective Order was violated when the Plaintiff went home. No warning was given to the Plaintiff. He was given no chance to explain his presence, or to leave his home peacefully. He posed absolutely no harm to anyone. Yet he was arrested and jailed again on the 16th. He again posted his bond and was released, now with three different orders regarding the conditions of his bond.

4.12    But this time at least, the Plaintiff could return home without fear of arrest. That is because on July 16th, the County Attorney held a secret proceeding in Justice Court. The order entered after the secret hearing states "… all matters in controversy, of fact and of law, were submitted to the court sitting without a jury…" and after the evidence was considered, the Court found that the First Protective

Filed
5/17/2021 12:20 AM
Deborah Bryan
Wilson County
District Clerk

Order should "vacated and dismissed" presumably because of the manner in which it was procured. The Plaintiff is informed and believes that the secret hearing which made it impossible for the Plaintiff to challenge the validity of the order *in abnitio*, was undertaken by the County Attorney in an attempt mitigate the harm already done to the Plaintiff. Instead of giving the Plaintiff notice, and allowing a hearing where the Plaintiff could present evidence, the County Attorney obtained another "emergency" order by making another *ex parte* application, this time to the County Court. The order served on the Plaintiff recites that the Plaintiff committed family violence. The County Attorney knew that was untrue as there was no family relationship protected under the statute, but convinced the Court to make such a finding knowing it was false. Having been twice arrested, once on a phone-in warrant issued at the request of an off-duty police officer, and the second time for violation of an order that was vacated, the Plaintiff was now faced with having a hearing before a judge that had already found that the Plaintiff had or would commit family violence. The Plaintiff thought prudence dictated that he agree to a protective order which would allow him to return to his home, put a limit on the Clark's conduct. And given the fact that he had a felony charge hanging over his head, and the County Attorney had intimated that all charges would go away if he agreed to and complied with the proposed agreed protective order, the Plaintiff signed an

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 13 of 22

Filed
5/17/2021 1:00 AM
Deborah Bryan
Wilson County
District Clerk

agreed protective order on July 21, 2020. (the Agreed Protective Order) without agreeing to the truth of the allegations.

    4.13. Four months later, the Plaintiff was formally charged with Criminal Mischief- less than $750, for damaging the gate, and for violation of the First Protective Order, which had been vacated, and will not support a criminal violation. He has never been charged with felony stalking. But since the County has up to 10 years to file such a charge, the threat of a felony charge hangs over the Plaintiff's head, and the Plaintiff has not made the complaints contained herein for fear of retaliation. The Plaintiff complied with all requests made in the criminal matters, he made all his court appearances, and did not rock the boat. However, shortly before the Plaintiff believed the criminal cases would be dismissed, the Clarks convinced the County to issue an arrest warrant for violation of the Agreed Protective Order. The Plaintiff is informed and believes that after being advised that the County Attorney intended to dismiss the criminal case entirely, the Clarks insisted that that the Plaintiff should be, and he was, charged with a crime for looking at Ms. Clark in a manner that frightened her. How the Clarks convinced the County Attorney to pursue these new charges in the face of his previous statements is unknown to the Plaintiff.

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

4.13.   But, again, an arrest warrant was issued for the Plaintiff's arrest.  And even though the Plaintiff was represented by counsel and the County Attorney knew it, the Plaintiff was not informed of the warrant.  When the Plaintiff discovered another warrant had been issued, he surrendered, was again jailed, and released on bond. With the fear of felony indictment still hanging over his head, the Plaintiff files this action to put an end to the Clarks conduct, and hold the County accountable for its shameless participation in the unlawful and unconstitutional arrest and detention of the Plaintiff at the behest of the Clarks.

## 5.0.   FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT.

5.1.   A bona fide dispute has arisen between the Plaintiff and the Clarks relating to the rights and obligations of the parties to the Easement. The Plaintiff requests the Court to enter a judgment declaring as follows:

> 5.1.A. That the Clarks had no legal right to erect a fence and gate across the Easement.   Whether an easement affords a right to a roadway free from gates and bars depends upon the terms of the grant, its purpose, the nature and situation of the property, and the way in which it is used.  In the case before the Court the Easement provides the only access to and from the Property to the county road. Prior to the actions of the Clarks, no gate had been erected and the way had not been limited.  In such situations the grant contained in the Easement does not give the Clarks any right to erect the fence and gate across the Easement.

Filed
5/11/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

5.1.B.  That the Clarks, as the owners of the servient estate they have no right to limit the Plaintiff's use of the Easement to the twelve feet they have fenced and gated. The Plaintiff seeks a declaration by the Court that the gate erected by the Clarks constitutes an unlawful impediment to the Plaintiff's right of free passage over as much of the Easement as he thinks proper or necessary.

5.2.    The Plaintiff, therefore, requests this Court to award him declaratory relief pursuant to TEX. CIV. PRAC. & REMEDIES CODE §37.001 *et. seq.*, the Texas Uniform Declaratory Judgment Act to that effect.

5.3.    The Plaintiff requests that the Clarks be ordered to pay the Plaintiff's attorneys' fees and expenses as set forth in TEX. CIV. PRAC. & REMEDIES CODE §37.009.

## 6.0.    SECOND CAUSE OF ACTION:    INJUNCTIVE RELIEF.

6.1.    The Plaintiff requests that upon trial of this cause, the Court enter a mandatory injunction requiring the Clarks to remove the gate from the Easement. The gate impairs the Plaintiff's free use of the Easement.

6.2.    The Plaintiff further requests that the Clarks be enjoined from erecting any further structures on the Easement which limit the usage of the Easement.

6.3.    The actions of the Clarks construction of a fence and gate on the Easement has caused damage to the Plaintiff's property.  Damaging the Plaintiff's property was undertaken as part of course of conduct which was intended to harass,

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 16 of 22

Filed
5/11/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

annoy and abuse the Plaintiff, and would cause the same feelings in any reasonable person. Without further intervention by this Court, the Clarks will continue commit such actions which are intended to and will cause the Plaintiff and any other reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

6.4.    Without injunctive relief, the Plaintiff has no remedy at law, as the local officials charged with regulating such conduct have already endorsed it. The Plaintiff therefor requests that after notice and hearing, during the pendency of this matter, the Court enter an injunction which prohibits the Clarks from:

> 6.4.A. Engaging in conduct, which is intended to cause, or that causes the Plaintiff to be placed in fear of bodily injury or death or in fear that an offense will be committed against his property, or to feel harassed, annoyed, alarmed. abused, tormented, embarrassed, or offended;

> 6.4.B. communicating with the Plaintiff in any manner except through his/her attorney of record or other person appointed by the Court;

> 6.4.C. communicating a threat through any person to the Plaintiff;

> 6.4.D. engaging in conduct directed specifically toward the Plaintiff including following the Plaintiff, glaring at the Plaintiff, staring at the Plaintiff in a public parking lot, or take any other course of conduct that is likely to harass, annoy. alarm. abuse, torment, or embarrass the Plaintiff.

---

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 17 of 22

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

6.5.    The Plaintiff requests that upon the final trial of this matter that the injunctions requested hereinbecome permanent.

## 7.0.    THIRD CAUSE OF ACTION: MALICIOUS PROSECUTION.

7.1.    The Clarks initiated and/or procured a criminal prosecution the Plaintiff by knowingly provides false information to those responsible for procuring the prosecution, and/or failed to report facts that might establish the Plaintiff was not guilty of any offense.  The proceeding was terminated in the Plaintiff's favor when the Justice of the Peace dismissed the proceedings against the Plaintiff.  The Plaintiff was innocent of the crime charged and there was no probable cause to initiate the criminal proceeding.  The Defendants acted with malice, as Mr. Scott told the Plaintiff he would solve the dispute over the Easement by having him prosecuted.

7.2.    As a direct and proximate cause of the Defendants' malicious prosecution, the Plaintiff has suffered damages.  The three nights in jail, in the midst of the Corona virus outbreak have caused him severe mental anguish manifesting itself in many forms.   The Plaintiff has also suffered damages in the form of lost wages and loss in earning capacity, both in the past and in the future

7.3.    Accordingly, the Plaintiff seeks a judgment against the Clarks, jointly and severally, for actual damages as set out herein.  The actions of the Clarks

Case 5:21-cv-00640-OLG-HJB    Document 1-3    Filed 07/07/21    Page 189 of 22

Filed
5/17/2024 12:00 AM
Deborah Bryan
Wilson County
District Clerk

constitute actions for which the law will allow exemplary or punitive damages. The Plaintiff seeks damages against the Clarks in an amount sufficient to deter them and others from engaging in the conduct described herein.

**8.0.    FOURTH CAUSE OF ACTION: Fourth Cause of Action: Violations of the Plaintiff's Constitutional rights pursuant to 42 U.S.C. § 1983.**

8.1.    The Plaintiff brings this cause of action against Stewart and Ashton in their official and personal capacities, and against the County. The Plaintiff makes no claims under the Texas Torts Claims Act.

8.2.    The Plaintiff has the right under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution to be free from wrongful arrest and false imprisonment by those acting under the power of the State. Ashton and Stewart acting at the level of official policy, practice, and custom, with deliberate, callous, and conscious indifference to the Plaintiff's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, proximately causing the deprivation of the Plaintiff's well established constitutional rights, and the resulting injury he suffered, by:

> 8.2.A. **Wrongfully arresting the Plaintiff.** A well-trained sheriff's deputy would know that facts relayed to Ashton on the telephone by Mr. Clark do not establish probable cause for a felony offense, and that no probable cause existed to arrest the Plaintiff for felony stalking or any other felony offense. As a favor to fellow peace officer

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

Ashton simply ignored existing facts, and/or deliberately and/or recklessly provided false or misleading information to assist in the procurement of a warrant. Mr. Clark's "dial-an-arrest" method of resolving his easement dispute resulted in a complaint being presented to Justice Terry that is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

**8.2.B. Falsely Imprisoning the Plaintiff.** The Plaintiff was detained by the Defendants for two days despite the fact that under the law he entitled to be set at liberty after posting a bond for the stalking charge, for which he has never been charged. Ashton intended this to happen, and instituted the First Protective Order at Mr. Clark's direction even though he had no personal knowledge of any facts supporting the arrest or issuance of the First Protective Order. The Defendants knew that their "Cooling-off Period" was only allowed in family violence cases but used it in this case to punish the Plaintiff for having a civil disagreement with a fellow police officer.

**8.2.C. Adopting the "Dial-an-Arrest" Policy.** Adopting and maintaining a policy of allowing deputies to swear out an arrest warrant based on a phone call, when the call is made by a fellow peace officer. The "dial-an-arrest" policy was enacted for the purpose of allowing the Sheriff and his deputies to arrest innocent civilians as a reciprocal favor to the fellow peace officer requesting the arrest.

**8.2.D. Adopting and executing the "Cooling-off" Policy.** Adopting and maintaining the policy of allowing the Sheriff, as the operator of the Wilson County Jail, to detain persons charged under Tex Pen. Code 42.07 for two days, even though the persons have not been convicted, or even charged with, any crime which would justify such action. There is no statutory authority for such a deprivation and even when given the purported right to do

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

so by a Court order procured without probable cause, any law enforcement official would know that to do so violates well established rights pre-trial detainees.

8.2.E. **Failure to provide adequate training.**  The Defendants failed to provide its Sheriff's Deputies with minimal training necessary to know how to legally prepare and present an arrest warrant based oh probable cause, when it is apparent and highly predictable that the failure to train will result in the violation of the due process rights of persons subject to arrest.

8.2.F. **Failure to properly supervise.**  The Defendants' official policies regarding the requests for and issuance of arrest warrants is in truth and effect, a policy of failing and refusing to take adequate preventative measures to ensure that employees properly apply for and issue arrest warrants.

8.3.    Because of the deliberate and intentional nature of Defendants' actions and the injury that Defendants caused, Plaintiff seeks injunctive relief, declarative relief, and monetary damages, as appropriate, against the respective Defendants, jointly and severally.

8.4.    The Plaintiff is entitled to recover his attorneys' fees pursuant to 42 USC §1988 and request an award against the Defendants liable thereunder.

## 9.0.    REQUEST FOR DISCLOSURE.

9.1.    Pursuant to Rule 194.1 of the Texas Rules of Civil Procedures, the Defendants are hereby requested to disclose, within 50 days of service of this

Filed
5/17/2021 12:00 AM
Deborah Bryan
Wilson County
District Clerk

request, the information or materials described in Rule 194.2, (a) - (i) and seasonally

supplement the responses as specified in Rule 193.5 of the Texas Rules of Civil

Procedure.

**10.0.  JURY DEMAND.**

10.1.   The Plaintiff requests that this case is decided by a jury, as allowed by

Tex. R. Civ. P. 216, and have paid the fee, therefore.

**11.0.  ATTORNEYS FEES.**

11.1.   The Plaintiff seeks an award of attorneys' fees under any Texas Statute

allowing an award of fees, including the Texas Uniform Declaratory Judgment Act,

and Tex. Civ. Prac. & Rem. Code §38.001, *et seq.* , and 42 U.S.C §1988.  The Plaintiff

seek an award of attorney fees under any other authority making a necessary of

attorney fees possible.

**12.0.  PRAYER**

12.1.   WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests

that the Court render the declaratory judgment requested above, and that the

Plaintiff be granted such other and further relief to which he may be justly entitled.

Filed
5/17/2021 12:20 AM
Deborah Bryan
Wilson County
District Clerk

Respectfully submitted,

 **LAW OFFICES OF
PETER J. STANTON**
www.pstantonlaw.com
111 Soledad, Suite 825
San Antonio, TX 78205
Telephone: (210) 472-0500
Telecopier: (210) 472-0515
*stanton@pstantonlaw.com*

By: _____
PETER J. STANTON
State Bar No. 19054500
Attorney for Plaintiff

---

*Thomas v. Clark, et al.*
Original Petition

Cause No.
Page 22 of 22